ALFRED KOHLBERG, INC. *v.* UNITED STATES (No. 4081) [1]

---

[1] T. D. 49394.

United States Court of Customs and Patent Appeals, January 24, 1938.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Richard H. Welsh*, special attorney, of counsel), for the United States.

[Oral argument December 9, 1937, by Mr. Isenschmid and Mr. Welsh]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain linen handkerchiefs with hand made hems, imported by appellant at the port of New York, were classified by the Collector of Customs as handkerchiefs, appliqued, and dutiable under the provisions of paragraph 1529 (b) of the Tariff Act of 1930 at 4 cents each and 40 per centum ad valorem. The pertinent provisions of said paragraph read as follows:

PAR. 1529. * * * (b) Handkerchiefs, * * * appliquéd, * * * all the foregoing, finished or unfinished, of whatever material composed, valued at not more than 70 cents per dozen, 3 cents each and 40 per centum ad valorem; valued at more than 70 cents per dozen, 4 cents each and 40 per centum ad valorem; *Provided*, That any of the foregoing valued at not more than 70 cents per dozen, if made with hand rolled or hand made hems, shall be subject to an additional duty of 1 cent each.

The collector's classification and assessment of duty as aforesaid was protested by the appellant and the merchandise was claimed to be dutiable as handkerchiefs wholly or in chief value of vegetable fiber, except cotton, under paragraph 1016 of said act, the pertinent provisions of which follow:

PAR. 1016. Handkerchiefs, wholly or in chief value of vegetable fiber, except cotton, finished or unfinished, * * * hemmed or hemstitched, * * * 50 per centum ad valorem: *Provided*, That any of the foregoing made with hand rolled or hand made hems shall be subject to an additional duty of 1 cent each.

In the United States Customs Court, Second Division, and here, the sole question presented was and is whether or not the handkerchiefs are appliquéd.

The Government introduced the testimony of four witnesses in an attempt to prove that the commercial meaning of the term "appliquéd" as applied to handkerchiefs differed from the common meaning of the term and that under the commercial understanding the articles at bar were appliquéd.

The appellant produced six witnesses whose testimony was to the effect that the common meaning and the commercial meaning of the term were the same in the trade and that the trade understanding was

such as to preclude the imported merchandise from being regarded as appliquéd handkerchiefs.

The trial court, after studying the said testimony, held that—

we are satisfied that such testimony does not establish any peculiar commercial use of the term "appliquéd", and the question must, therefore, be determined according to the common or ordinary meaning of that term.

It further held that under the common meaning of the term the imported handkerchiefs were appliquéd, and overruled the protest of the importer. From the judgment of the trial court, importer has here appealed.

The method of making the involved handkerchiefs is described by one of the importer's witnesses as follows: To a square of white linen of the desired size straight strips of colored linen about one and one-half inches wide, cut from a piece of colored linen, are sewed to the four edges thereof. Then the outside edges of these colored strips are cut by hand into the desired shape or design. The colored strips are then turned back over the white square and sewed down at their shaped edges. They are entirely hand made.

As we understand the contention of appellant, it is aptly summarized in its brief as follows:

From the foregoing it appears that this court has interpreted its decision in the *Hamburger Levine Co.* case, *supra*, to mean that an "appliqued figure or design must have been *independently fabricated* and *thereafter applied or transferred to another article or fabric*" * * *.

*   *   *   *   *   *   *

* * * The portion of the handkerchiefs claimed to be "appliqued" was not "independently fabricated and thereafter transferred and applied to them", but the work done was incident to and a part of the operation of making the hem on them. In fact, they were not "handkerchiefs" until the hem was completed.

A characteristic of "applique", like that of "embroidery", is that it is superimposed upon an otherwise finished article or fabric to embellish it; hence, since the work in question on these handkerchiefs is done in connection with making the hem on them, and is necessary to complete them, we submit they are not "handkerchiefs, appliqued". * * *

Appellant, in support of its contention that the articles are not appliquéd, relies largely upon certain language used in the decision of this court in the case of *United States* v. *Hamburger Levine Co.*, 5 Ct. Cust. Appls. 217, T. D. 34382. Appellant, after setting out in its brief a number of the definitions referred to by this court in the *Hamburger Levine Co.* case, *supra*, and after quoting certain excerpts from that opinion, states:

It is therefore manifest from the foregoing definitions, and their interpretation by this court, that the term "applique" means *figures* or *designs* which are *cut out in outline* from one material and *transferred* and *applied* to another material for ornamentation.

The strips of colored linen which are sewed to the four edges of the handkerchiefs in question in this case to form their hems we submit are not within that meaning, even though they are, *after they have become part of the handkerchiefs,* cut into designs on one edge before the hem is completed. They merely produce *ornamental hems* on the handkerchiefs, which the preponderance of the testimony establishes are generally known in the trade as "cut hem handkerchiefs", and not as "appliqued handkerchiefs."

Part of the language in the *Hamburger Levine Co.* case, *supra,* which is quoted and relied upon by appellant is as follows:

\* \* \* It is true that in the case of several of the definitions above copied the word "appliquéd" is given a general meaning consistent with the claim of the Government, but in relation to the ornamentation of one fabric by means of figures or designs taken from another, the word is limited to such designs or patterns as are cut in outline from the other fabric and does not include ribbon-like strips of figured goods sewn in their entirety upon garments. The Oxford Dictionary, as above appears, defines appliqué as a trimming *"cut out in outline* and laid on another surface." The International Encyclopaedia calls it a pattern *"cut out* from one foundation and applied to another." These definitions do not apply to solid strips of printed goods merely *cut.off* from other fabrics, but to designs or figures which are themselves *cut out* from their containing fabric and thereby separated therefrom. The three books on needle work, from which quotations are given above, either directly or indirectly sustain this interpretation, and the illustrations contained in them are consistent with that understanding only. In the case of Krusi *v.* United States (1 Ct. Cust. Appls. 168) the appliqué work in question was described as follows: "A piece of cloth *cut to shape* from a cotton fabric in one case and a silk fabric in the other, with a small ornament in the center." In the case of J. H. Thorp & Co., under the tariff act of 1897, decided by the Board of General Appraisers in 1899 (T. D. 21375), the following definition of the term in question was given by Fischer, G. A.:

This merchandise corresponds with the definition given to the word "appliqué" by all the standard dictionaries and with the trade understanding. The general definition is: "Ornamentation with a pattern, which has been cut out of another color or stuff, applied or transferred to a foundation."

The Government concedes that upon the record at bar we are precluded from considering any meaning of the term "appliquéd" but its common or ordinary meaning.

In arriving at the meaning of the term, we think it important to consider the definitions thereof as set out in a number of leading authorities. It is not necessary, we think, unduly to extend this opinion by quoting all such definitions which were regarded as of importance in the *Hamburger Levine Co.* case, *supra.* For our purposes here, the following will be sufficient:

Oxford:

*Appliqué,* sb. Work applied to or laid on another material; *spec.* A trimming cut out in outline and laid on another surface. Also in metal work; and *fig.* Hence appliquéd.

International Encyclopaedia:

*Appliqué,* a. Applied; laid on; said of ornaments cut from one fabric and transferred to another or to fabric of another color; as, lace *appliqué* upon a groundwork of other material.

*Appliqué,* n. Any ornament laid out and applied to another surface in cloth, wood, or metal; also, a piece of work or the kind of ornamentation thus produced.

Webster:

*Appliqué.* Having a pattern which has been cut out and transferred from another foundation, as a kind of lace.

Century:

*Appliqué,* a. 1. In modern dress and upholstery, applied or sewed on, or produced in this way. Thus, the gimp or pattern of soiled or injured lace may be sewed upon a new ground, or embroidered flowers may be secured to new silk; in such a case the pattern or ornament is said to *be appliqué,* and the whole is *appliqué* work.

In said *Hamburger Levine Co.* case, *supra,* the Government in supporting the classification of the collector, contended that children's frocks and aprons made of a cotton fabric which had been ornamented with strips or bands of other printed, figured, cotton goods sewed upon their surface were appliquéd. In order properly to understand and interpret the language used by this court in holding that the frocks and aprons were not appliquéd, it is important to note that it emphasized the fact that running throughout the definitions of the term "appliquéd" there was the essential thought that the superimposed material must be in the form of a design cut in outline before it is superimposed.

The importer here, according to the above-stated contentions, seems to urge that in the *Hamburger Levine Co.* case, *supra,* this court intended to hold that nothing would be regarded as appliquéd unless the design was cut out and had an independent existence before *any part of it* was attached *in any way* to the article. In that case the superimposed cloth strips were not in the form of a design and were regarded, like strips of tape, as trimmings. Obviously, a strip had been *cut off* from some other article and had a separate existence before being applied to the garment. In the instant case, there is no question about there being a completed design before it was *superimposed upon the surface of the linen.*

As to the above contention of the appellant relating to the design not having a separate existence prior to being applied to the handkerchief, we think this subject matter is so aptly dealt with in the very thorough and well-worded opinion of the trial court, by Judge Tilson, that to quote from the same here answers fully the contention made:

The plaintiff stated that "This strip is then sewed on by hand to the edge of the square of white linen," and that "After being sewn on, the unsewn edge of the strip, the colored linen is then cut into the *designs* wanted, and is then turned over and sewed on the white linen square." It is therefore apparent from the testimony, and also from an examination of the samples in evidence, that these handkerchiefs, as imported, did not have attached to them a one and one-half inch strip of colored linen. They had attached to them what was once nothing more than a one and one-half inch strip of colored linen, but which had been, in the language of the plaintiff, "cut into the designs wanted."

It is true that in the case of several of the definitions above copied the word "appliquéd" is given a general meaning which would be consistent with our holding that this one and one-half inch strip of colored linen was applied to the square of white linen when said strip of colored linen was attached or sewed to the edge of said square of white linen, and if we should hold that said strip of colored linen was applied or appliquéd to said square of white linen when it was merely attached or sewed to the edge of said square, it would not be appliquéd, because the definitions above quoted do not apply to solid strips of printed or colored goods merely cut off from other fabrics, but to designs or figures which are themselves cut out from their containing fabric and laid on or applied to another surface.

The general, and we think the controlling, thought running through the majority of the above-quoted definitions of "appliquéd" is that the figures or designs which are themselves cut out from their containing fabric, must be *placed upon* the surface of, rather than attached to the edge of the article or material of which they are to become a part. * * *

When were these one and one-half inch strips of colored linen "placed upon", * * * the square of white linen which had been cut to the size wanted? The answer is that these said strips were merely attached to the edge of said square, and, as strips of colored linen, they were never laid, sewed, placed, fixed, or applied to the surface of said square of white linen. The testimony shows that after these strips had been sewed to the edge of the said square they were then "*cut into the design wanted*", turned over and sewed on the white linen square. So, that which was actually laid, sewed, placed, fixed, or applied to the surface of the said square was a design, and not a mere strip of colored linen one and one-half inches wide. It will thus be seen that when the figures or designs were attached to the said squares, they were not merely stitched to the edge of said squares, but were fixed upon and applied to the surface of said squares.

Appellant earnestly contends that attaching the edge of the strip of colored cloth to the edge of the foundation cloth completed or helped to complete the hem or edge of the handkerchief, that an appliquéd handkerchief must be a completed handkerchief which has subsequently been appliquéd, and that any act which resulted in helping to complete the edges of the handkerchief could not be regarded as appliquéing. While it seems to be true that sewing the strip of colored cloth to the edge of the foundation cloth does help to give the handkerchief the edge finish which it had at the time of importation, it is not thought that this is a matter of controlling importance. The trial court answered this phase of appellant's argument by quoting from the decision of this court in *Marshall Field & Co.* v. *United States,* 19 C. C. P. A. (Customs) 366, T. D. 45509, as follows:

Appellant contends that the stitching is not embroidery; that, not withstanding the fact that it may give an otherwise plain handkerchief a fancy appearance, it cannot be regarded in law as embroidered, since the stitching serves the useful purpose of preventing the raveling of the edges * * *.

* * * * * * *

The provision "whether or not the embroidery is on a scalloped edge" in paragraph 1529, *supra,* is a new provision not found in previous tariff acts.

The court below, referring to this provision, said—

By the provision for "handkerchiefs embroidered * * * whether or not the embroidery is on a scalloped edge," in paragraph 1529 (b) of the Tariff Act

of 1930, the Congress has clearly indicated its intention to bring within that provision scalloped handkerchiefs, on the edges of which there appears ornamental and decorative stitching which produces forms, figures, or designs, even though this stitching may also serve an incidental utilitarian purpose.

We agree with the conclusion of the court below in the above-quoted language. * * *

There is no question but that the stitching of the straight edge of the colored cloth to the edge of the handkerchief helps to fasten the superimposed cloth to the surface of the white linen, and agreeable to our conclusion in *Marshall Field & Co.* v. *United States, supra,* we are of the opinion that although this stitching did serve the incidental utilitarian purpose of helping to bind the edge, it should not be regarded as changing the fact that a cut-out cloth design has been superimposed upon and applied to the surface of the handkerchief.

We are of the opinion that the common meaning of the term "appliquéd," as ascertained from the quoted authorities and the record before us, is broad enough to warrant a holding that the goods at bar are appliquéd handkerchiefs and dutiable as assessed by the collector. The United States Customs Court properly overruled the protest and its judgment is *affirmed.*